IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 6, 2016

**JAMES HARDIN v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C15-229          Donald H. Allen, Judge**

_____

**No. W2016-00536-CCA-R3-PC**

_____

The Petitioner, James Hardin, appeals the Madison County Circuit Court's denial of his petition for post-conviction relief from his convictions of two counts of aggravated robbery and one count of aggravated burglary and resulting effective sentence of twenty-two years in confinement. On appeal, the Petitioner contends that he received the ineffective assistance of counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

William J. Milam, Jackson, Tennessee, for the appellant, James Hardin.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Jerry G. Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On January 12, 2013, Dr. Allyson Anyanwu and Lorenzo Amador were robbed inside Dr. Anyanwu's home. State v. Christopher Lee Cunningham and James Cleo Hardin, No. W2014-00230-CCA-R3-CD (C), 2015 WL 1396441, at *1 (Tenn. Crim. App. at Jackson, Mar. 24, 2015), perm. to appeal denied, (Tenn. July 20, 2015). Dr. Anyanwu had recently purchased the home and had hired Mr. Amador to perform minor renovations. Id. Dr. Anyanwu was in the kitchen when two African-American men led Mr. Amador into the kitchen at gunpoint. Id. At trial, Dr. Anyanwu testified that the two

men were wearing hooded sweatshirts with the hoods pulled up on their heads and that she could see their faces clearly.  Id.  However, Mr. Amador testified that they were wearing masks and that he could see only their eyes.  Id.  One of the gunmen, later identified as the Petitioner, took Mr. Amador's cellular telephone and wallet and Dr. Anyanwu's cellular telephone.  Id.  He then ordered Dr. Anyanwu and Mr. Amador to kneel on the floor, and the two gunmen left.  Id.  As they were leaving the house, the Petitioner took Dr. Anyanwu's purse that had been on the kitchen counter.  Id.

Dr. Anyanwu called the police from a neighbor's house.  Id.  The police interviewed the victims and searched for the gunmen but were unable to find them.  Id.  A few days later, Mr. Amador recognized one of the gunmen walking down the street and telephoned the police.  Id.  The police detained Christopher Cunningham and the Petitioner, and Mr. Amador identified Cunningham as one of the robbers.  Id.  Mr. Amador was unable to say with certainty whether the Petitioner was the second robber.  Id.  Several days later, the police showed a photograph array to Dr. Anyanwu, and she selected the Petitioner's photograph and identified him as one of the robbers.  Id.

The defendants were tried jointly, and the jury convicted them as charged of two counts of aggravated robbery and one count of aggravated burglary.  Id. at *2.  After a sentencing hearing, the trial court sentenced them to eleven years for each aggravated robbery conviction, to be served consecutively, and five years for the aggravated burglary conviction, to be served concurrently, for a total effective sentence of twenty-two years.  Id.  On direct appeal of their convictions to this court, the defendants argued that the evidence was insufficient to support the convictions and that the trial court erred by ordering consecutive sentencing.  Id. at *1.  This court affirmed the convictions and sentences.  Id.

On August 7, 2015, the Petitioner filed a pro se petition for post-conviction relief, alleging that he received the ineffective assistance of counsel.  The post-conviction court appointed counsel and held an evidentiary hearing.

At the hearing, the Petitioner testified that trial counsel represented him at trial and on appeal.  He said that counsel met with him only twice before trial and that both meetings occurred the day before trial.  Counsel told the Petitioner about an offer for the defendants to plead guilty in exchange for a six-year sentence to be served at thirty percent release eligibility.  Counsel told the Petitioner that the offer was a "package deal" and that both defendants had to accept it.  The defendants rejected the offer.  The Petitioner said that counsel "went over the motion" and asked if the Petitioner was ready to go to trial.  The Petitioner told counsel, "[Y]eah."

- 2 -

The Petitioner testified that he wanted Michelle Douglas to testify at trial. He described Ms. Douglas as "[t]he lady I was with at the time of the robbery" and said that she could have provided him with an alibi. The Petitioner did not have Ms. Douglas' address, but his sister had Ms. Douglas' telephone number, and the Petitioner gave the number to counsel. Counsel told the Petitioner that he could not find Ms. Douglas. The Petitioner said that counsel also should have obtained video surveillance from "[t]he neighborhood store" on East Chester. The Petitioner told counsel about the video, but counsel did not present the video at trial. The Petitioner's mother was present at his sentencing hearing, but counsel did not call her to testify. On cross-examination, the Petitioner testified that his mother "could have testified good on [his] behalf."

Trial counsel testified that he was appointed to represent the Petitioner on "arraignment day" and that the Petitioner remained in custody throughout counsel's representation. Counsel said that he met with the Petitioner "[s]everal" times in jail and when the Petitioner came to court. Counsel did not have any trouble communicating with the Petitioner, and the Petitioner received discovery materials.

Regarding the Petitioner's alibi witness, trial counsel testified that the Petitioner "mentioned the name that he testified to[,] Ms. Douglas" and that counsel thought he received "a family member's name and a number." However, counsel could not locate Ms. Douglas and explained that to the Petitioner. Counsel also spoke with the Petitioner about the video surveillance. Counsel stated that "my office checked on it and to the best of my memory, the tape wasn't available." Counsel said that he did not remember talking with the Petitioner about the Petitioner's mother testifying at the sentencing hearing but that, in any event, "I didn't think it was the thing to do to put his mother on the stand. I didn't think it would bear any mitigating circumstances. I didn't think that would help. I thought it might actually aggravate[] the circumstances."

The State asked if trial counsel could think of anything he could have done differently in his representation of the Petitioner, and counsel stated that he wished he could have convinced the State to make a plea offer. He said that an offer of six years at thirty percent was "our goal" but that he did not think the State ever made an offer. Counsel said, "We had no choice but to go to trial or plead blind."

On cross-examination, trial counsel testified that he had been practicing law since 1993 and that he practiced "everything," including criminal defense. The Petitioner's case was not counsel's first criminal case. Post-conviction counsel asked how many times trial counsel met with the Petitioner before trial, and trial counsel answered, "Well, I think it was more than two times." Regarding the Petitioner's alibi witness, trial counsel said that his office "made attempts to contact the person that Mr. Hardin had put us in touch with and we requested [that] the information on Ms. Douglas be provided to

us and it wasn't ever." Counsel said that he did not interview any witnesses before trial but that he read the discovery materials and knew what the State's witnesses were going to say at trial. Counsel stated that he could not remember how long he waited to try to obtain the store's video surveillance but that the Petitioner was indicted about four months after the Petitioner was in the "lower court." Regarding the Petitioner's mother testifying at the sentencing hearing, counsel said he "didn't think it was a good idea" because "[i]t was a tough set of facts and he wasn't going to testify and I didn't think that she could help him under the circumstances." Counsel did not present any witnesses at the sentencing hearing and "just relied on the presentence report."

On redirect examination, the State showed trial counsel a document from the Petitioner's discovery. Counsel stated that his handwriting was on the document and acknowledged that it showed the State made an offer for eight years at eighty-five percent release eligibility. Counsel said the Petitioner would only accept a six-year offer.

In a written order, the post-conviction court denied the petition for post-conviction relief. The court accredited trial counsel's testimony that he met with the Petitioner several times before trial and that he investigated the case after discussion with the Petitioner. The court specifically discredited the Petitioner's claim that trial counsel met with him only the day before trial, stating, "Court records indicate that on at least two occasions prior to his trial date, that Mr. Hardin and [defense counsel] appeared in Court together for appearances and plea cut-off dates." The court found that trial counsel "fully investigated" the possibility of Ms. Douglas testifying as an alibi witness but that counsel was unable to locate her. The court also found that counsel "fully investigated" the possibility of obtaining video surveillance from a store but that counsel was unable to locate the video. The court noted that the Petitioner failed to present credible evidence that Ms. Douglas or the video even existed and that he failed to present any evidence as to what his mother would have said at sentencing if called to testify on his behalf.

## II. Analysis

The Petitioner contends that he received the ineffective assistance of counsel because trial counsel met with him only twice before trial and failed to prepare for trial adequately, failed to call alibi witnesses, failed to obtain the store's video surveillance, and failed to call his mother to testify at his sentencing hearing. The State argues that the Petitioner failed to show he received the ineffective assistance of counsel. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means

evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Generally, [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component. Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Here, the post-conviction court accredited trial counsel's testimony that he met with the Petitioner several times before trial and prepared for trial, that he was unable to locate Ms. Douglas, and that he was unable to obtain the store's video surveillance. We note that the Petitioner has failed to explain what more counsel should have done to prepare for trial, that he has not explained how the video would have helped his case, and that he did not present Ms. Douglas at the evidentiary hearing. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (stating that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense,

these witnesses should be presented by the petitioner at the evidentiary hearing"). As to the Petitioner's claim that counsel should have had his mother testify at his sentencing hearing, the Petitioner contends that he "wanted his mother to testify positively on his behalf." However, the Petitioner also did not have his mother testify at the evidentiary hearing, and we may not speculate on what benefit she may have offered to his case. Id. Accordingly, we conclude that the post-conviction court did not err by denying post-conviction relief.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE